UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,              :
                                         :
          Plaintiff,                     :
                                         :
vs.                                      :   Case No. 44:18-cv-1819
                                         :
SOUTH COUNTY SHOPPINGTOWN LLC,           :
a Delaware   limited liability company;  :
                                         :
J. C. PENNEY CORPORATION, INC.,          :
a Delaware corporation;                  :
                                         :
PANERA, LLC,                             :
a Delaware limited liability company;    :
                                         :
          Defendants.                    :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendants, SOUTH COUNTY SHOPPINGTOWN LLC, a Delaware limited liability

company; J. C. PENNEY CORPORATION, INC., a Delaware corporation; and PANERA, LLC,

a Delaware limited liability company (sometimes referred to as "Defendants"), for declaratory and

injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with

Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant South County Shoppingtown LLC's property, the South County

Shopping Center, is located at and near 18 S. County Center Way, St. Louis, Missouri 63129, in St. Louis County ("South County Shopping Center").

3.      Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendants' properties and places of public accommodation are located in and do business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant South County Shoppingtown LLC owns, leases, leases to, or operates a place of public accommodation (shopping center) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant South County Shoppingtown LLC is responsible for complying with the obligations of the ADA.

6.      The place of public accommodation that the Defendant South County Shoppingtown LLC owns, operates, leases or leases to is known as the South County Shopping Center.

7.      Defendant J. C. Penney Corporation, Inc. owns, leases, leases to, or operates a place of public accommodation (retail store) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant J. C. Penney Corporation, Inc. is responsible for complying with the obligations of the ADA.

8.      The place of public accommodation that the Defendant J. C. Penney Corporation, Inc. owns, operates, leases or leases to is known as "JCPenney" in the South County Shopping Center.

9.     Defendant Panera, LLC owns, leases, leases to, or operates a place of public accommodation (restaurant, bar, or other establishment serving food or drink) as defined by the ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.  Defendant Panera, LLC is responsible for complying with the obligations of the ADA.

10.     The place of public accommodation that the Defendant Panera, LLC owns, operates, leases or leases to is known as "Panera" in the South County Shopping Center.

11.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

12.     Fred Nekouee travels to the St. Louis area every three to six months to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.   In the past, Fred Nekouee has also attended heavy equipment auctions in the St. Louis area.

13.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the South County Shopping Center which forms the basis of this lawsuit on March 26, 2018, and on September 23, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area and close to the hotels he stays at in the area.

14.     Fred Nekouee has definite plans to return to the St. Louis area and visit the South County Shopping Center in December 2018.

15.     Mr. Nekouee likes to shop at stores like JCPenney to buy necessary items for himself while traveling or gifts for his family, and since it is a chain store he knows generally what

3

it offers for sale.

16.     Fred Nekouee has bought goods at the JCPenney in the South County Shopping Center on March 26, 2018.   He would like to return to the JCPenney at the South County Shopping Center.

17.     Fred Nekouee likes the food and drink at Panera at the South County Shopping Center.

18.     Fred Nekouee has bought food and drink at the Panera at the South County Shopping Center on March 26, 2018 and on September 23, 2018.   He would like to return to this Panera.

19.     The JCPenney, Panera, and the South County Shopping Center are close to the hotels he stays at in the area.

20.     Plaintiff Fred Nekouee has visited the St. Louis area near the South County Shopping Center in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

21.     For the reasons set forth in paragraphs 12-19 and 31, Mr. Nekouee plans to return to the South County Shopping Center.

22.     The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's and women's restrooms in JCPenney and Panera at the South County Shopping Center, have impaired his access to the goods and services at JCPenney and Panera, and deterred him from trying to access other stores at the South County Shopping Center.

23.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

24.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

25.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

26.     On his visits to the South County Shopping Center, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, and walking surfaces (including sidewalks).

27.     The Plaintiff also encountered barriers to access to and in the men's and women's restrooms in JCPenney and Panera.

28.     The Plaintiff is deterred from visiting the South County Shopping Center even though he enjoys its goods and services at such places of public accommodation as JCPenney and Panera, because of the difficulties he will experience at the shopping center until the property is made accessible to him in a wheelchair.

29.     The Plaintiff is deterred from visiting other stores in the South County Shopping Center, even though the shopping center is close to the hotels he stays in when he visits the area because of the difficulties he will experience there in the parking lot, access aisles, and walking surfaces, until the property is made accessible to him in a wheelchair.

30.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 35 of this Complaint.

Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

31.     Fred Nekouee desires to visit the South County Shopping Center not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

32.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

33.     The Plaintiff Fred Nekouee is expressly authorized to bring this action under 42 U.S.C § 12188(a), incorporating by reference the remedies set forth in 42 U.S.C. § 2000a-3.

34.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

35.     Preliminary inspections of the South County Shopping Center, , JCPenney, and Panera at the shopping center have shown that violations exist.   The violations that Fred Nekouee personally encountered or observed on his visits to the South County Shopping Center include, but are not limited to:

**PARKING AREA**

a.   In the parking lot, the accessibility sign identifying the parking space for disabled patrons in front of Game Stop and Red Wing Shoes is installed at 48 inches above the

ground surface and less than the minimum required height of 60 inches, in violation of Federal Law 2010, ADAAG § 502.6.

b.   As shown in the photographs below, in the parking lot, the parking space for disabled patrons in front of JCPenney has an excessively steep running slope, as steep as 1:25 (4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this condition and it made it very difficult for him to unload from and load into his vehicle.





c.   In the parking lot, the parking space for disabled patrons with van access in front of JCPenney has an excessively steep running slope, as steep as 1:28.6 (3.5%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.

d.   In the parking lot, the change in elevation in the parking space for disabled patrons in front of Game Stop and Red Wing Shoes is about 1 inch and greater than the maximum allowed change in level of 0.5 inches, in violation of Federal Law 2010, ADAAG § 502.4 and 303.3.   The Plaintiff encountered this condition and it made him unstable in his wheelchair.

e.   In the parking lot, the access aisle serving the disabled parking spaces in front of Mattress Firm, Panera, and Golf Discount is uneven and its running slope is excessively steep, as steep as 1:19.2 (5.2%), which slope exceeds the maximum allowed slope of 1:48

(2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these conditions, and they made him unstable in his wheelchair.

f.   In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of Game Stop, Panera, and Red Wing Shoes is as steep as 1:21.3 (4.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition and it deters him from visiting these stores in the shopping center.

g.   In the parking lot, the running slope of the front section of the access aisle serving the disabled parking spaces in front of JCPenney is as steep as 1:22.2 (4.5%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff was unstable in his wheelchair in this access aisle due to this steep slope.

h.   In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Game Stop, Panera, and Red Wing Shoes is as steep as 1:14.3 (7%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this condition and he required assistance to keep from tipping over in his wheelchair.

i.   In the parking lot, the running slope of the walking surface in front of Game Stop and Panera is as steep as 1:7 (14.3%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition.

j.   The cross slope of the walking surface in front of Great Clips is as steep as 1:23.3 (4.3%), which slope is steeper than the maximum allowed cross slope of 1:48 (2%), in

violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition and it deters him from visiting Great Clips.

k.   The cross slope of the accessible route or walking surface to the front door of JCPenney is as steep as 1:27.8 (3.6%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this condition and it made unstable in his wheelchair.

l.   The running slope of the accessibility ramp in front of Great Clips is as steep as 1:7.2 (13.9%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff observed this condition.

m.   The running slope of the accessibility ramp in front of JCPenney is 1:8 (12.5%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this condition and it made him unstable in his wheelchair.

n.   The slope of the accessibility curb ramp side or flare in front of Great Clips is as steep as 1:5.2 (19.2%), which slope is dangerously steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff observed this condition and it deters him from visiting Great Clips.

o.   Handrails are not provided around the ramp in front of Game Stop and Red Wing Shoes where the slope is 12.9% in a ten foot length, a ramp run rise of approximately 15.48 inches, which rise is greater than the maximum allowed rise of 6 inches over a ten-foot span, in violation of Federal Law 2010, ADAAG §§ 405.8 and 505.   The Plaintiff observed this condition and it deters him from visiting Game Stop and Red Wing Shoes.

p.   The transition from the access aisles of the parking space marked for disabled use

to the curb ramp leading to the accessible route to JCPenney contains a change of level of approximately 1.5 inches, which change in level is greater than the maximum allowed change in level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   The Plaintiff encountered this change in level and he required assistance to move over it in his wheelchair.

q.   The ramp landing in front of Great Clips has a slope as steep as 1:25 (4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff observed this condition.

r.   The curb ramp in front of Great Clips projects into vehicular traffic lanes and does not have the required landing, in violation of Federal Law 2010, ADAAAG §§ 406.5 and 502.4.   The Plaintiff observed this dangerous condition, and it deters him from visiting Great Clips.

**JCPENNEY ENTRANCE DOOR**

s.   The automatic door opener to the JCPenney entrance is not working and the force needed to open this entrance door is 12.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this entrance door and to enter JCPenney.

**JCPENNEY MEN'S RESTROOM**

t.   The force needed to open the men's restroom door in JCPenney is 11 ponds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law

2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this door and to enter this men's restroom.

u.    As shown in the photograph below, the men's restroom in JCPenney does not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this condition.



v.    In the men's restroom in JCPenney, the counter surface of the sink is 36 inches above the finish floor, which height is higher than the maximum allowed height of 34 inches (865 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 606.3. It was difficult for the Plaintiff to use this sink with its high counter surface.

w.   In the men's restroom in JCPenney, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff could not fully close this door when he entered the compartment to use the toilet.

x.   In the men's restroom in JCPenney, the paper towel dispenser handle is 54 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff could not reach this handle from his wheelchair.

y.   In the men's restroom in JCPenney, the space between the rear grab bar and the seat cover dispenser above this bar is 9 inches and less than the required minimum of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   This condition made it difficult for the Plaintiff to use the grab bar to transition from his wheelchair to the toilet.

z.   In the men's restroom in JCPenney, the accessible compartment door handle is small and requires tight grasping and pinching and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG § 309.4 and 404.2.7.   The Plaintiff encountered this door handle, and he could not fully close the door to this compartment.

**JCPENNEY WOMEN'S RESTROOM**

aa.   Having encountered barriers in the men's restroom in JCPenney, Fred Nekouee tried using the women's restroom.   The force needed to open the door to the women's restroom in JCPenney is 10.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff required

assistance to open this door and enter the women's restroom.

bb.   The accessible toilet compartment door pull in the women's restroom in JCPenney is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff observed this condition.

cc.   In the women's restroom in JCPenney, the space between the rear grab bar and the seat cover dispenser above this bar is 9 inches and less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff observed this condition.

dd.   In the women's restroom in JCPenney, the toilet paper dispenser centerline is about 1 inch from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff observed this condition.

ee.   In the women's restroom in JCPenney, the accessible compartment door pull is too small (0.75 inches gap) and requires tight grasping and pinching and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff observed this condition.

**PANERA BREAD INTERIOR FOOD SERVICE AREA AND ENTRANCE DOOR**

ff.   The slope of the surface within the hallway of the interior entrance door maneuvering space of 60 inches is as steep as 1:34.5 (2.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2019, ADAAG § 404.2.4.4.   The Plaintiff encountered this condition and it caused him to slide sideways in his wheelchair in this maneuvering space.

gg.   The water dispenser in Panera is at 52 inches above the finish floor, and higher

than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   In his wheelchair, the Plaintiff could not reach this water dispenser.

**PANERA MEN'S RESTROOM**

hh.    In the men's restroom in Panera, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the paper towel dispenser and is only 8 inches, which maneuvering clearance is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, Fred Nekouee encountered this condition, and it made it very difficult for him to try to open this door.

ii.    In the men's restroom in Panera, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff could not fully close the door to this compartment due to this condition.

jj.    As shown in the photograph below, in the men's restroom in Panera, the lavatory pipes under one of the sinks are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   In his wheelchair, the Plaintiff used this sink and was at risk of skin burn and injury due to the lack of insulation on these pipes.



kk.    In the men's restroom in Panera, the paper towel dispenser is installed in the circulation path, protrudes 8 inches into the circulation path to the sink, and is installed between 27 inches (9685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion is greater than the maximum allowed protrusion of 4 inches, in violation of Federal Law 2010, ADAAG § 307.2.   In his wheelchair, the Plaintiff encountered this condition.

ll.    In the men's restroom in Panera, the clear floor space to the urinal is about 28.5 inches and less than the minimum required width of 36 inches to an alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches), in violation of Federal law 2010, ADAAG §§ 305.7.1 and 305.7.2.

mm.    In the men's restroom in Panera, the toilet paper dispenser is outside the reach range of an individual in a wheelchair, which dispenser centerline is about zero inches from the front of the water closet and not between a minimum of 7 inches and a

maximum of 9 inches, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

nn.   In the men's restroom in Panera, the coat hook is installed at about 59 inches above the finish floor and is higher than the maximum allowed reach height above the finish floor of 48 inches, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed this coat hook.

**PANERA WOMEN'S RESTROOM**

oo.   Having encountered barriers in the men's restroom in Panera, Fred Nekouee tried using the women's restroom.   The door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is only 8 inches and is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   The Plaintiff observed this condition.

pp.   In the women's restroom in Panera, the accessible toilet compartment door pull is not provided on both sides of the door latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff observed this condition.

qq.   In the women's restroom in Panera, the pipes below one of the sinks are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   The Plaintiff encountered this condition.

rr.   In the women's restroom in Panera, the paper towel dispenser is installed in the circulation path, protrudes 9 inches into the circulation path to the sink, and is installed between 27 inches (9685 mm) and 80 inches (2030 mm) above the finish floor, which protrusion is greater than the maximum allowed protrusion of 4 inches, in violation of Federal Law 2010, ADAAG § 307.2.   In his wheelchair, the Plaintiff encountered this

condition.

ss.   In the women's restroom in Panera, the controls for the lavatory faucet require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   The Plaintiff had difficulty using the faucet to the sink.

36.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

37.   The discriminatory violations described in paragraph 3 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

38.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.   s'

39.   Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

40.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

41.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

42.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

43.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

19

44.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

45.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the South County Shopping Center and adjacent parking lot spaces, JCPenney, and Panera, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

46.     Millions of Americans require the use of a wheelchair for mobility.

47.     The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

48.     Removing existing architectural barriers to access pursuant to Title III of the ADA will be good for business at the South County Shopping Center.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when

20

such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

      c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*